FRANK SWARTZ, d/b/a Frank Swartz Sales Company, Plaintiff-in-Error, v. H. R. SANDERS, d/b/a Beasley Amusement Company, Defendant-in-Error.—406 S.W. (2d) 70.

Middle Section, at Nashville. April 29, 1966.

Certiorari Denied by Supreme Court August 15, 1966.

Robert C. Boyce, Jr., Nashville, for plaintiff in error.

J. Ross Cheshire, Jr., Nashville, for defendant in error.

PURYEAR, J. This is a suit on an oral sales contract. In addition to referring to the parties herein by name, we will also refer to them as complainant and defendant as they were designated in the trial Court.

Complainant, H. R. Sanders, d/b/a Beasley Amusement Company, filed his original bill in Chancery Court alleging, in substance, that on February 12, 1962, he purchased from defendant several amusement machines located in eight retail establishments and also a truck and some unexpired privilege licenses, for the sum of $14,500.00; that as part of the consideration for such purchase, the defendant agreed to assist and help com-

plainant in every way possible to retain and hold the retail locations of such machines; that defendant breached his contract with complainant by recouping for himself four of such locations a few months after the sale, thus causing the complainant to lose expected profits, for which complainant sued in his bill.

Process was properly served on the defendant and on December 6, 1962, defendant filed his answer admitting the sale and also admitting that he agreed to introduce a representative of the complainant to the owners of the various retail establishments where the machines were located.

In such answer defendant denied that he agreed to assist and help complainant in every way possible to retain and hold such retail locations, alleging that defendant performed his agreement to introduce a representative of the complainant to the owners of such establishments where the machines were located; the answer further denied that defendant violated any agreement he made with complainant and specifically alleged that he had a right to locate his own machines in such retail establisments after the sale.

The case was tried by the Chancellor on depositions and documentary evidence introduced by the complainant. The defendant did not testify, nor introduce any evidence.

The learned Chancellor filed a memorandum opinion, which contains an accurate statement of the case, and therefore, we quote the opinion as follows:

"The complainant operates an amusement company and on February 12, 1962, he purchased from the defendant a number of amusement machines of various

types, which were located in restaurants, beer halls, and drive-ins, a truck, and federal, state and county privilege licenses for a total consideration of $14,500.00. There were encumbrances on some of the machines held by banks which complainant paid and the balance of $12,346.37 was paid to defendant in cash.

The contract of sale was verbal, in fact it did not appear there was a bill of sale executed by defendant for the machines and truck. It was a cash transaction.

Complainant alleges in his bill that as a part of the consideration for the purchase the defendant 'agreed to assist and help Sanders (complainant) in every way possible to retain and hold the retail locations being sold, same being of material value to complainant and without which complainant would not have purchased the machines, etc., located in said locations, and the defendant was to go with a representative of complainant to meet the owners of the several retail establishments and assist in every way possible to create good will and retain these locations for complainant.' Defendant denied that he agreed to 'assist in every way possible to create good will and retain these locations for complainant.'

The complainant further alleged and it was admitted by defendant that the defendant did go with an employee of complainant and introduced him to the owners of the various retail establishments in which the machines were located and told them that he had sold the machines to the complainant and that Mr. May, the employee of complainant, would service and take care of the machines.

This suit is brought to recover of the defendant damages for the alleged breach of his contract with complainant, in that within about eight months of the sale he placed amusement machines in some of the establishments in which the machines he had sold complainant were located.

The depositions of complainant and his employee, May, were taken and filed, however it is significant that the defendant offered no proof.

The amusement machine business in retail establishments is highly competitive and the owners of the locations have sole control of who can place and operate machines in their places of business. Hence the sale of the machines on the various 'locations' to complainant by defendant did not constitute an assurance that complainant would enjoy said business for any given period of time.

In March 1962, defendant was employed by complainant to work in his amusement machine store. This employment had no connection with the sale previously made of the machines on 'location'. Complainant went on a trip in October 1962 and returned in November 1962. During his absence defendant had quit working for him and gone back into the business of placing amusement machines in retail establishments and, in fact, had placed some machines in several of the retail establishments in which some of the machines he had sold complainant had been located.

The Court finds that the defendant agreed to assist and help the complainant in every way possible to retain and hold 'the location'.

This is not an agreement by the defendant not to go back in the business of placing amusement machines in retail establishments without limitations with respect to time, it is an agreement to assist the complainant in every way possible to retain and hold 'the locations.' This agreement is not against public policy nor does it prevent the seller from going back into business. The defendant went back into business and not only did not help complainant keep 'the locations', he actively solicited and secured the placement of his own machines in some of 'the locations' and this within the space of about eight months after the sale. The Court is therefore of the opinion that defendant breached his contract and the complainant is entitled to recover his damage.

Decree accordingly.

ALFRED T. ADAMS
CHANCELLOR.''

(Tr. pp. 14-16)

Pursuant to the foregoing memorandum opinion, the Chancellor entered a decree ordering that the complainant have and recover damages from the defendant in the sum of $7,029.67, and the costs of the cause, which decree was entered on July 9, 1965. (Tr. p. 17)

On August 3, 1965, defendant filed a motion in the trial Court to set aside the foregoing decree or to amend it upon the grounds that the pleadings and proof were insufficient to support the decree awarding $7,029.67 damages to complainant, and further moving the Court, in the alternative, to refer to the Clerk and Master the matter of a determination of the amount of damages. (Tr. p. 18)

On August 6, 1965, the Chancellor took the foregoing motion under advisement and entered an order providing, among other things, the following:

"The decree complained of in the motion and heretofore entered on July 8th, 1965 in Minute Book 76, page 357, is suspended pending the further action of the Court on the motion under advisement, to the end that the rights of the defendant on appeal, may be fully protected pending the judgment of the Court on the aforesaid motion." (Tr. p. 19)

On August 24, 1965, the Chancellor entered an order overruling the motion. (Tr. p. 20)

On August 27, 1965, execution was issued by the Clerk and Master and executed by garnishment on the Commerce Union Bank, as a result of which garnishment the bank paid into the hands of the Clerk and Master the sum of $7,358.37, which amount is now being held by the Clerk and Master.

On August 31, 1965, the defendant prayed an appeal from the original decree entered on July 9, 1965, and from the decree overruling defendant's motion entered on August 24, 1965, which prayer for appeal was denied by the Chancellor for the reason that the time for praying such appeal had elapsed. Thereupon, defendant filed the record for writ of error in this Court and presented a petition for writ of error and supesedeas, upon which petition this Court entered the following order:

"On this day Defendant Frank Swartz, d/b/a the Swartz Sales Company, presented his petition for a Writ of Error and Supersedeas to the Honorable Thomas A. Shriver, Presiding Judge, Court of Ap-

peals. Upon statement by counsel for both parties, it is ordered that the Clerk of the Court of Appeals file this petition, notice and transcript. It further appearing that the amount of the judgment, interest and costs is presently held by the Clerk & Master of the Chancery Court and that the parties agree that said money shall continue to be held by the Clerk & Master until a final decision on the appeal of this case. It is ordered that the money so held by the Clerk & Master shall not be disbursed to either party pending the final judgment on appeal; and said money shall stand in lieu of bond for the amount of the judgment, and accordingly disbursed in satisfaction of said judgment in the event same shall be affirmed.

The writ of error is granted upon the Plaintiff-in-error executing a bond for the costs in the Appellate Court.

Sept. 17, 1965.''

(Minute Book 16, page 141, Minutes of this Court)

Defendant has filed ten assignments of error, and by assignments numbered one, four, six and seven, he insists that the evidence preponderates against the decree of the Chancellor.

The contract under consideration here was oral and on the specific question involved here the complainant, Sanders, testified as follows:

''Q. Did you have any understanding at the time of your purchase from Mr. Swartz with reference to what he might—what you would expect him to do or what he would be willing to do, if anything, with reference to retaining these locations?

A. Yes, in buying an operation of this type, there is always a possibility of losing some locations, and Mr. Swartz agreed to assist in every way possible to help up hold the locations after we took them over.

Q. In other words, you understood that in buying this location that you would have no permanent guarantee that you could retain them?

A. That's right.

Q. But you did have an agreement that he would assist you in every way possible?

A. He would assist in every way possible to retain the locations."

(Tr. p. 34)

As we have heretofore stated, the defendant did not introduce any evidence, and, therefore, the foregoing testimony of Mr. Sanders is not denied by the defendant, except in his answer.

Naturally, Mr. Sanders expected to receive some revenue from the machines in question and they could not be expected to produce any revenue unless they were properly located in places where they would be used for the purpose for which they were intended. Therefore, that portion of the contract by which the defendant agreed to assist in every way possible to retain the locations was an important part of it.

■ Although the evidence does show, that at the outset, the defendant did assist complainant by going to locations with an employee of complainant and advising the owners and operators of such retail establishments that complainant had purchased the machines, the evi-

dence also conclusively shows that the defendant later breached his agreement a few months after the sale by going to several of these very locations and inducing the owners or operators thereof to discontinue use of complainant's machines and install machines owned by defendant, thus depriving the complainant of the benefit of an important part of the consideration for which he had paid defendant the sum of $14,500.00.

Therefore, it is our opinion that the evidence preponderates in favor of complainant's theory that the defendant breached his contract, as a result of which complainant sustained damages. We overrule assignments of error numbered one, four, six and seven.

In assignment of error number two, defendant insists that the trial Court erred in finding and holding that the agreement in question was an agreement not to go back in business of placing amusement machines in retail establishments. A careful reading of the Chancellor's memorandum opinion shows that the Chancellor specifically found and held this was *not* an agreement by the defendant not to go back in the business of placing amusement machines in retail establishments, and, therefore, there is no merit in this assignment of error and it is overruled.

In assignment of error number three, defendant insists that the trial Court erred in finding and holding that the agreement was not against public policy. In support of this assignment defendant contends that the agreement violated Section 69-101, Tennessee Code Annotated, which is as follows:

"69-101. *Trusts and combinations lessening competition or controlling prices unlawful and void.*—All ar-

rangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.''

It will be seen from the original bill, the evidence, and the Chancellor's memorandum opinion in this case, that this Code Section is not applicable to the agreement in question because it does not constitute an agreement undertaking to prevent the seller from going back in business in competition with the purchaser. We find no merit in this assignment and it is overruled.

In assignments of error numbered five and eight, defendant insists that the evidence was not sufficient to justify the Court in fixing a definite amount of damages, and if damages be recoverable, that matter should be referred to the Clerk and Master.

The matter of ordering a reference to determine the amount of damages is within the discretion of the Chancellor. Section 640 Gibson's Suits in Chancery, 5th Edition. Therefore, these two assignments are overruled.

The complainant insists that his damages consisted of loss of expected profits. This is an element of damages which can be recovered, provided they can be proved with reasonable certainty, as held by this Court

in Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Company, 42 Tenn.App. 92, 298 S.W.2d 788, and Hagan v. Nashville Trust Co., 124 Tenn. 93, 136 S.W. 993.

The evidence which was presented to the Chancellor included records kept by the complainant showing the revenue on a weekly basis from the time of purchase up until complainant's machines were forced off location by the defendant's breach of his contract, and from this evidence, it could easily be ascertained by the Chancellor that the complainant's loss of expected profits as a direct and proximate result of the defendant's breach of contract, amounted to $7,029.67. Therefore, we find no merit in assignments numbered five and eight and they are overruled.

In assignments of error numbered nine and ten, defendant complains of the action of the Chancellor in refusing to grant him an appeal, and directing that the money reached by garnishment upon Commerce Union Bank to be paid to the Clerk and Master.

Although the questions raised by these two assignments of error are now moot, we have considered them and have reached the conclusion there is no merit in these two assignments of error.

We consider defendant's motion to set aside or amend the original decree of the Court as a petition to rehear, and that the only decree from which the defendant could appeal was the original decree awarding complainant $7,029.67 damages, which was entered on July 9, 1965.

Although, when the Chancellor took defendant's petition to rehear under advisement, he ordered a suspension of the original decree, this suspension remained in

effect for only eighteen days, and after subtracting these eighteen days from the period elapsing between July 9th and August 31st, on which latter date defendant prayed an appeal, we find that more than thirty days elapsed from the entry of the decree of July 9, 1965, before defendant prayed an appeal on August 31, 1965. Therefore, the Chancellor properly denied defendant's prayer for an appeal and the Clerk properly issued the execution which resulted in garnishment.

In these two assignments of error, defendant also insists it was error for the Chancellor to deny an appeal from the decree overruling the petition to rehear, but it has been held in many cases in this State that a decision upon an application for rehearing in equity, upon the record as it existed at the original hearing, is not appealable. Galloway v. Dunnington, 78 Tenn. 216; McClister v. Milligan, 1 Tenn.App.258; Capshaw v. Town of Cookeville, 185 Tenn. 96, 203 S.W.2d 369, and Kittrelle v. Philsar Development Co., 50 Tenn.App. 84, 359 S.W.2d 837.

We have considered all the assignments of error and finding no merit in them, they are overruled and the decree of the Chancellor is affirmed with costs.

The Clerk and Master of the Chancery Court of Davidson County will be directed to pay to the Clerk of this Court the sum of $7,358.37, which is now being held by him in this cause.

Humphreys, J., concurs.

Shriver, J., not participating.