# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 10, 2012

## WILLIE PERRY, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-11-150     Roy B. Morgan, Jr., Judge**

---

**No. W2011-01818-CCA-R3-PC  - Filed July 11, 2012**

---

The petitioner, Willie Perry, Jr., pled guilty to two counts of theft of property valued $1,000 or more but less than $10,000, each a Class D felony, and was sentenced to serve, in prison, two twelve-year sentences to run concurrently with each other.  The petitioner brought this post-conviction petition, seeking relief on the basis that his trial counsel failed to investigate and advise him regarding the possibility that the property was valued at less than $1,000. The post-conviction trial court denied the claim, and the petitioner appeals the denial of relief and the trial court's refusal to admit certain evidence regarding the property's value.  After a thorough review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J. joins and JEFFREY S. BIVINS, J., in a seperate opinion concurs in results only.

Mike Mosier, Jackson, Tennessee, for the appellant, Willie Perry, Jr.

Robert E. Cooper, Attorney General and Reporter; James G. Woodall, District Attorney General; Sophia S. Lee, Senior Counsel; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual History

The petitioner's convictions arise from the theft of two automobiles and their sale to

a salvage yard in April and May 2010. The petitioner was charged with two counts of theft of property in violation of Tennessee Code Annotated section 39-14-103(a). Under Tennessee Code Annotated section 39-14-105,[1] theft offenses are classified based on the value of the property and may range from a Class A misdemeanor to a Class B felony. The defendant entered a best interest guilty plea to two counts of theft of property valued $1,000 or greater but less than $10,000, a Class D felony. The petitioner then brought this petition for post-conviction relief, alleging that his pleas were not entered knowingly and voluntarily because the property in each count was valued at less than $500 and that he was denied the effective assistance of counsel in that trial counsel failed to investigate the value of the vehicles or to file a motion to dismiss. The petitioner also alleged that the prosecution had failed to disclose exculpatory evidence, that the circuit court did not have jurisdiction, and that he had uncovered newly discovered evidence – these issues are not raised on appeal. The petitioner, being indigent, was appointed counsel. No amended petition was filed.

At the post-conviction hearing, the petitioner testified that trial counsel only visited him one time, on the eve of trial, when trial counsel communicated the plea offer to him. The petitioner stated that while trial counsel provided him with discovery, she did not return his calls or letters. According to the petitioner, he sent trial counsel a certified letter asking her to pursue certain witnesses, including Eric Newbill, Isaac Cole, and Linda Ingram. The petitioner alleged that trial counsel did not contact these witnesses. He testified that trial counsel did not discuss the value of the property with him or the fact that theft was classified according to the value of the property stolen. He testified that, had he known that the value of the property might have been less than what was charged in the indictment, he would not have pled guilty to the charges. However, the petitioner acknowledged that he knew one of the cars had been sold for $316 to the scrap yard and might be valued at less than $1,000, and he testified that neither vehicle was running. He also acknowledged a prior misdemeanor conviction for theft of property under $500, and admitted he was aware that the value of property could make a difference in the classification of theft. The petitioner testified that he thought it would be difficult to be acquitted without his witnesses and so he decided to plead guilty.

During his testimony, the petitioner attempted to introduce into evidence certain computer printouts purporting to show the Kelley Blue Book value of the automobiles in question; one printout showed that the price of a 1993 Nissan Altima was less than $1,000 if the car was in "fair" rather than "good" or "excellent" condition, and one appeared to show that the trade-in value of a 1994 Mitsubishi Mirage was less than $1,000. The State raised

[1]This section has since been amended to include additional classifications, to clarify prosecution for theft occurring as part of a common scheme, purpose, intent, or enterprise, and to specify venue. *See* 2012 Tenn. Pub. Acts ch. 1080.

a hearsay objection, and the petitioner's counsel countered that the documents were not being offered to show the truth of the matter asserted. The post-conviction court excluded the evidence, noting that the petitioner was "not in a position to testify about value" and that the printouts were from May 26, 2011. The post-conviction court also noted that the estimates were not linked to the individual vehicles, but were purportedly for vehicles of the same make, model, and year.

Linda Ingram, one of the witnesses the petitioner wanted trial counsel to contact, testified at the post-conviction hearing that sometime in May 2010, she had seen a man who was not the petitioner driving the petitioner's truck and towing a car which was the same color as one of the stolen vehicles. There was another unidentified man in the vehicle being towed. Ms. Ingram included this information in an affidavit which she had notarized and which she gave to the petitioner's girlfriend. Ms. Ingram testified that she would have been available to give the same testimony at trial but that she was never contacted by trial counsel. The petitioner's girlfriend, Valerie Miller, confirmed that she had received Ms. Ingram's affidavit and stated she had given it to trial counsel.

Trial counsel testified that she met with the petitioner once in the Department of Correction and several other times at a local facility. She testified that she discussed the value of the two cars "extensively" with the petitioner, and that she had looked up the Kelley Blue Book values on the internet. According to trial counsel, she discussed with the petitioner that the owners of the vehicles would be able to testify to the value, and that in her experience, the jury would accredit the owners' testimony so long as it was within the bounds of reason. Trial counsel testified that there were no funds available to hire expert witnesses, and it would have been difficult to get proof regarding value in front of the jury. In her investigation, trial counsel discovered that one vehicle was simply out of gas, and the other, according to the owner, needed a fuel pump; she testified that she believed both sold for below $500 for salvage. Trial counsel testified that the petitioner wanted to preserve the question of the value of the vehicles on appeal and that she had informed him that he would not be able to; the petitioner nevertheless insisted he would "file something to challenge that."

Trial counsel testified that she did not pursue Ms. Ingram as a witness because Ms. Ingram's memory regarding the date was vague and because a witness for the State was going to testify that he was acquainted with the defendant and that he witnessed the defendant and an accomplice sell the vehicle for scrap around that same date. Trial counsel also noted that the petitioner was originally charged with three counts of theft, and Ms. Ingram could only testify to one occasion when she witnessed someone else operating the petitioner's truck. She testified she discussed the implications of Ms. Ingram's testimony with the petitioner but that she never spoke with Ms. Ingram because she did not receive her

-3-

contact information, which she requested "several times" from the petitioner's girlfriend. She testified that the petitioner had a substantial record and could have faced twenty-four years in prison because consecutive sentencing "was a definite possibility."

The post-conviction court denied the petition. The post-conviction court found that, based on the transcript of the guilty plea and the testimony of trial counsel that she had discussed potential witnesses, valuation, and consecutive sentencing with the petitioner, the petitioner's pleas had been knowing and voluntary. It further found that the petitioner failed to carry his burden regarding the ineffective assistance of counsel claim. The post-conviction court cited to the petitioner's testimony that trial counsel had discussed discovery and potential sentences with him; trial counsel's testimony that she discussed the value of the property, the potential witnesses, and consecutive sentencing; and the petitioner's testimony during the guilty plea that he was satisfied with counsel. The post-conviction court also found that the defendant had familiarity with valuation of theft offenses, as it was "not his first rodeo." The post-conviction court determined that the potential witnesses had "limitations" and that the petitioner had not shown that the witnesses would have made any substantial difference.

The petitioner appeals, alleging that his trial counsel was constitutionally ineffective in (1) failing to adequately communicate with him; (2) failing to investigate the case and contact witnesses; and (3) failing to inform him regarding the potential impact the valuation of the property could have had on his conviction and sentencing, resulting in pleas that were not knowing and voluntary.[2] The petitioner also asserts error in the post-conviction court's refusal to admit into evidence the Blue Book valuations.

## Analysis

### A. Blue Book Valuations

The post-conviction court sustained the State's objection to the admission of the Blue Book valuations. Decisions regarding the admissibility of evidence are within the discretion of the trial court, and the trial court's ruling will not be overturned absent an abuse of

---

[2]On appeal, the petitioner alleges only that his pleas were not knowing and voluntary because he did not receive the effective assistance of counsel. Insofar as his brief could be construed to allege the pleas do not meet the constitutional requirement that they be voluntarily, understandingly, and knowingly made, the record shows that the pleas "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn.2003) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The record demonstrates that both trial counsel and the trial court conferred with the petitioner to make sure he understood the ramifications of his plea. *See Grindstaff v. State*, 297 S.W.3d 208, 218 (Tenn. 2009).

discretion. *State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997).

The Tennessee Rules of Evidence prohibit the introduction of hearsay, which is any statement, other than one made by the declarant at trial or at a hearing, offered to prove the truth of the matter asserted. Tenn. R. Evid. 801(c), 802. Hearsay is nevertheless admissible if it falls within one of the exceptions provided by the Rules. Under Tennessee Rules of Evidence 803(17), "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" are admissible. Kelley Blue Book values fall under this hearsay exception. *United States v. Johnson*, 515 F.2d 730, 732 (7th Cir. 1975) (rejecting argument that "Red Book" values were hearsay); *Terrell v. Terrell*, No. 02A01-9610-CV-00254, 1997 WL 576536, at *4 (Tenn.Ct.App. Sept. 18, 1997) (noting that Blue Book values "constitute highly probative evidence"); *Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *45 n.37 (Tenn. Ct. App. June 29, 2007) ("Kelley's Blue Book, which contains a range of values for used vehicles, has been recognized as an objective guide to valuing vehicles."); *see also Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849, 860 (Tenn. Ct. App. 1999) (finding trade journal advertisements of shredder prices were not hearsay). We conclude that the post-conviction court erred insofar as its decision to exclude the evidence was based on the prohibition against hearsay.

However, the post-conviction court, in excluding the evidence, also referred to the fact that the printouts were generated more than a year after the thefts and that the petitioner could not testify to the value of the property. The post-conviction court noted that the values of the vehicles would have changed in the interim, and also observed that the Carfax was not for the actual vehicle but for a vehicle of the same make, model, and year.[3] The source of the printouts, which were copies of the exhibits attached to the petitioner's *pro se* petition, was not identified, although the petitioner testified that his girlfriend had checked car values on the computer. We conclude that the post-conviction court did not abuse its discretion in refusing to admit the printouts which were generated more than a year after the thefts and which were not authenticated. *See State v. Pilgram*, No. E2004-00242-CCA-R3CD, 2005 WL 602380, at *5-6 (Tenn. Crim. App. 2005) (concluding there was no abuse of discretion in refusing to admit evidence when Blue Book values were of current value rather than value at the time of the crime and defense counsel did not inform court how printout would be

---

[3]Although the post-conviction court made reference to a Carfax report, the exhibits appear to be Kelley Blue Book valuations, which estimate the automobile's value based on make, model, year, and mileage, and do not use the VIN number to estimate the value of a specific vehicle. A Carfax report for one of the automobiles in question was attached to the post-conviction petition, but this report did not have a value generated for the car.

authenticated); *see also Johnson*, 515 F.2d at 732 n.4 (admitting evidence because "an adequate foundation was established by the lengthy testimony . . . explaining how 'Red Book' data are collected and used" and because "[a]ny weakness inherent in the use of 'Red Book' figures caused by the fact that they represent only averages and do not take into consideration the condition of any particular automobile was adequately brought out on cross-examination").

## B. Ineffective Assistance of Counsel

Under Tennessee Code Annotated section 40-30-103, a court must grant relief when a criminal conviction is void or voidable due to the violation of a right secured by the United States Constitution or the Tennessee Constitution. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to counsel. The right to counsel is the right to the reasonably effective assistance of counsel, *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008), and counsel's performance should fall within "the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must show both that trial counsel's performance was deficient and that the deficiency resulted in prejudice. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011). The court must be highly deferential in evaluating counsel's performance, and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Counsel's duty is to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. The court must not view counsel's actions through the lens of hindsight but should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Felts v. State*, 354 S.W.3d at 277 (quoting *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). In order to demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

In the context of a guilty plea, the prejudice prong can be satisfied by showing that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial" – i.e., that the deficiency affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The

petitioner does not, however, have to demonstrate that the outcome of the trial would have been more favorable than the plea entered. *Grindstaff v. State*, 297 S.W.3d 208, 217 (Tenn. 2009). When the petitioner alleges a failure to investigate, the court must determine the "likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. at 59.

The petitioner bears the burden of proving the factual allegations of the post-conviction petition by clear and convincing evidence. T.C.A. § 40-30-110. "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d at 216 (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). While a post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise, mixed questions of law and fact, including claims of ineffective assistance of counsel, are reviewed de novo. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Because a claim of ineffective assistance of counsel requires proving both deficiency and prejudice, the court may deny a petition based on a failure to establish either prong, and need not address the requirements in any particular order or address both prongs if the petitioner fails to establish either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

The petitioner testified that although trial counsel had provided him with discovery, she only met with him once. Trial counsel testified that she met with the petitioner once in the Department of Correction but also met with him several other times. The post-conviction court made no findings regarding trial counsel's alleged failure to visit the petitioner in prison more than once prior to trial. This issue was not included in the petition or raised in front of the post-conviction court, and an issue not raised in the post-conviction trial court is waived. T.C.A. § 40-30-106(g) ("A ground for relief is waived if a petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." ); T.C.A. § 40-30-110 ("Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition."); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). Although the issue is waived, we note that the petitioner made no allegation that he would not have pled guilty had his attorney visited him or communicated with him more regularly, and therefore the petitioner would in any event be unable to establish prejudice.

The petitioner's next issue, that trial counsel was deficient in failing to locate or subpoena relevant witnesses, was likewise not included in his petition; the trial court

nevertheless considered the issue and found that the witnesses' testimony would not have had a material effect on the trial. While the issue has been waived by the petitioner's failure to include it in his petition, we also conclude that the evidence does not preponderate against the post-conviction court's conclusion that the testimony would not have had an effect on the outcome of a trial. Two of the witnesses whom the petitioner faults counsel for failing to locate did not testify at the post-conviction hearing, barring relief. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (holding that when a petitioner alleges failure to present witnesses, those witnesses should be presented at the post-conviction hearing). The other witness's testimony, while favorable to the petitioner, was not inconsistent with the petitioner's guilt. Because trial counsel testified that she was aware of the content of Ms. Ingram's testimony, there is no "likelihood that discovery of the evidence would have led counsel to change [her] recommendation as to the plea" or that the testimony "likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. at 59. This issue is without merit.

The petitioner's final claim is that his counsel was ineffective in failing to investigate or pursue the theory that the property in question was valued at less than $1,000. The petitioner's testimony related to this claim differs markedly from that of his trial counsel, who testified that she discussed valuation "extensively" with the petitioner and that she made the petitioner aware that the property might be valued at less than the statutory definition of the charge but that she expected the jury to accredit the estimates of the property's owners regarding value. While the post-conviction court did not make an explicit credibility determination in denying the claim, the court's reference to trial counsel's testimony that she discussed the value of the property with the petitioner implicitly accredits trial counsel's testimony. Moreover, the petitioner's testimony at the post-conviction hearing was that he knew both that theft was classified according to the value of the property and that the property might have been valued at less than $500. The petitioner has failed to show by clear and convincing evidence that trial counsel did not investigate the possibility that the property was valued at less than $1,000 or advise him regarding the ramifications of that possibility. Furthermore, as the petitioner's own testimony shows that he was aware that theft was classified according to the property's value and that the property might be worth less than $1,000, he has not shown prejudice resulting from any alleged failure to investigate. Accordingly, we conclude the trial court did not err in denying relief.

**CONCLUSION**

Because the trial court did not abuse its discretion in refusing to admit the evidence at issue and because the petitioner had failed to show deficiency and prejudice in his claim that he did not receive the effective assistance of counsel, we affirm the judgment of the post-

conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE